**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SIMON CHAN,** Former employee of Massachusetts Bay Transportation Authority<br>**PLAINTIFF,**<br>**V.**<br>**CHARLIE BAKER,** Governor of the Commonwealth of Massachusetts; **and**<br><br>**STEPHANIE POLLACK,** Secretary & CEO of Massachusetts Department of Transportation; **and**<br><br>**STEVE POFTAK,** General Manager of Massachusetts Bay Transportation Authority, MBTA and Vice-chair of the Fiscal Management & Control Board, FMCB; **and**<br><br>**BRIAN SHORTSLEEVE,** General Manager of the MBTA and Board Member of the FMCB **and**<br><br>**VINCE POON,** former Benefit Manager of the MBTA<br><br>**MASSUCHUSETTS BAY TRANSPORTATION AUTHORITY; and MASSACHUSETTS DEPARTMENT TRANSPORTATION and FISCAL MANAGEMENT AND CONTROL BOARD.**<br>**DEFENDANTS** | **Civil Action No.**<br>**1:20-CV-11449-DJC**<br><br>**DEMAND FOR JURY TRIAL** |

# VERIFIED COMPLAINT

Plaintiff Simon Chan, Pro Se, hereby brings this Verified Complaint against Defendants, Charlie Baker, in his official capacity as Governor of the Commonwealth of Massachusetts (Governor Baker), and Stephanie Pollack, in her official capacity as Secretary and CEO of the Department of Transportation (DOT), and Steve Poftak and Brian Shortsleeve, in their official capacities as General Managers (GM) of the Massachusetts Bay Transportation Authority (MBTA) and Board Members of the Fiscal Management and Control Board (FMCB), and Vince Poon, in his official



FILED
IN CLERKS OFFICE
2020 SEP -8 PM 1:37
DISTRICT OF MASS.

capacity as Benefit Manger of the MBTA, and the MBTA itself, and the DOT, and the Fiscal Management and Control Board of the Massachusetts Commonwealth and Plaintiff alleges and states the following:

**PARTIES**

1. Plaintiff Simon Chan is a former employee (from yr 2007 to 2018) of the MBTA who now resides at 1203 Symmes Circle, Arlington, MA 20474. He used to serve as an MBTA Call Center Representative.
2. Defendant Charlie Baker is the Governor of the Commonwealth of Massachusetts. Governor Baker maintains an office at the Massachusetts State House, Office of the Governor, Room 105, Boston, Massachusetts, 02133.
3. Defendant Stephanie Pollack is Secretary and CEO of the Department of Transportation (DOT). Secretary Pollack has direct control over the MBTA and the FMCB. Secretary/CEO Pollack maintains an office at 10 Park Plaza, Suite 4160, Boston, MA 02116.
4. Defendant Steve Poftak is the current General Manager of the Massachusetts Bay Transportation Authority (MBTA) and Board Member of the Fiscal Management and Control Board (FMCB) who maintains an office at 10 Park Plaza, Law Dept., Boston, MA 02116.
5. Defendant Brian Shortsleeve is former General Manager of the MBTA and current Board Member of the FMCB who maintains an office at 10 Park Plaza, Law Dept., Boston, MA 02116.
6. Vince Poon is former Benefit Manager of MBTA, now at Bentley University, Waltham, MA
7. Massachusetts Department of Transportation at 10 Park Plaza, Boston, MA 02116
8. Massachusetts Bay Transportation Authority situated in 10 Park Plaza, Boston, MA 02116
9. Mass. Fiscal Management and Control Board situated in 10 Park Plaza, Boston, MA 02116

## NATURE OF THE CASE AND ALLEGATIONS

10. This is an action seeking temporary, preliminary and permanent injunctive relief, a declaratory judgment, and other appropriate relief to set aside as unconstitutional the recent actions of Defendants, Governor Baker, Secretary Pollack, the DOT, the MBTA, the FMCB, MBTA GM Shortsleeve, GM Poftak and former MBTA Benefit Manager, Vince Poon, to violate the Equal Protection Clause of the 14th Amendment of the United States Constitution and other Mass state and federal laws as well as to breach employment contracts. Defendants' actions and omissions have caused enormous financial and emotional harms to Plaintiff.

11. Defendant Governor Baker has a dubious record on race relations. The first significant act he did after assuming governor's office in the winter of 2015 was firing then visionary MBTA GM, Dr. Beverly Scott, due to massive train delays caused by record 70 inches of snow falls. He did not give any fair consideration of the insurmountable disruptions caused by mother-nature's worst snow storms in decades. He blamed Dr. Scott for the delay debacle and removed her out of office. In the summer of 2019, MBTA's Red Line train derailed near the JFK station and also caused massive and irritable subway delays for weeks. It was an epic failure of incumbent MBTA GM Poftak (co-defendant). However, on this occasion, Governor Baker did not fire incumbent GM Poftak. He forgave Poftak. The 70 inches of snow in 2015 that buried New England for weeks was not a preventable disaster, but the 2019 Red Line train derailment was an equipment maintenance failure that was absolutely preventable had GM Poftak done a better job in equipment check-ups and accident simulation studies. Dr. Scott, an African American woman, apparently suffered from the double standards applied by Governor Baker. It appeared that race and gender are factors in Governor Baker's inexorable removal of Dr. Scott and that Governor

Baker has set a tune of discriminatory culture and practices for MBTA management echelons to follow suit since taking office in 2015. This tune of discrimination has been quietly shaping co-defendants' collective discriminatory behaviors against plaintiff and his co-workers. This lawsuit centers on the discriminations Plaintiff suffered while working under the MBTA management and thereafter.

12. Plaintiff started to work full time as an essential service worker, Call Center Representative (CCR) of the MBTA in late January, 2007. He is a union member of the Local-453 which handled his employment contracts with the MBTA. On June 2nd 2016, MBTA's GM Shortsleeve, Co-defendant, signed a Memorandum of Understanding (Exhibit A) with Local 453 to extend Plaintiff's employment contract with MBTA to **June 30th 2018**.

13. On June 20th 2016, MBTA presented and lauded this tentative contract agreement as a unique achievement in securing workers "**significant concession**" (financially) to its oversight body, Fiscal management & Control Board (FMCB) in public session and recorded such in an FMCB document (Exhibit B. Page 3)

14. On **June 7th 2017**, all of a sudden, Defendant Shortsleeve sent a layoff notice (exhibit C) to Plaintiff and the entire 14 Call Center CCR's to inform them of termination of their employments with the MBTA, effective **June 30th 2017**, despite there was a binding MOU (Exhibit A) to guarantee their labor contract till **June 30th 2018.** The main reason of termination of employment contract stated was cost saving. It lacks persuasion because as mentioned in paragraph 13, Shortsleeve had presented to the FMCB that the MOU entailed contract carry **significant concession.** GM Shortsleeve's self- contradiction gave Plaintiff sufficient ground to allege intentional breach of contract against all Defendants.

15. MBTA has about 10 different unions of workers that are contracted with MBTA to provide services to its entire operations. Local-453 union accounts only about 5% of the entire MBTA workforce. On the first bullet point on Page 3 of Exhibit B, MBTA mentioned that Local-453 is made of salaried workers who receive no Overtime Pay. That means Local-453 is a more cost saving work force than other MBTA union workers who have Overtime incomes. If cost saving was a real motivation to downsize the work force, why shouldn't MBTA serve their cost cutting knife on the union jobs with Overtime perks before laying off the Local-453 jobs that have no overtime income. The priority mix-up is an intentional violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution. MBTA appears to favor many overtime pay accessible workers over the non-overtime Local-453 workers.

16. On June 30th 2017, MBTA reached a separation agreement with Plaintiff's union, Local 453, to extend Plaintiff's employment one more month to August 1st 2017. It was recorded in another MOU executed by Defendant Shortsleeve and Local 453 president (Exhibit D). It offered options for the 14 laid-off employees to either receive 3 week severance pay (option 2) or remain employed for additional 30 days to vest his pension account (Option 3). Plaintiff chose the pension vesting Option 3 and remained employed by the MBTA till **August 1st 2017** by forfeiting 3 week severance pay.

17. In 2017, the MBTA offered laid-off workers unconditional opportunities to apply for bus driver jobs. During my layoff cycle in early June 2017, through the arrangements of MBTA Benefit Manager, Vince Poon and HR generalist Laura Karabello, Plaintiff was offered the same to apply for bus driver and was scheduled an interview with the MBTA Bus Operation at the Charlestown Bus Depot on **July 3rd 2017**. However, on **June 26th 2017**, all of a sudden,

Defendant Vince Poon sent me an email to threaten to terminate my elected Option 3 of Exhibit D (pension vesting) if I continue to apply for bus driver position. In the same email, he indicated that he was cutting me a severance check (as stated in Option 2 of Exhibit D) to separate me from MBTA employment by **June 30th 2017.** In other words, the MBTA, through Vince Poon, was coercing Plaintiff to take Option 2 if I continue my bus driver application process. Under this big gun of intimidation, in order to keep my pension Option 3 alive, I immediately withdrew my bus driver application and indicated such to Vince Poon by email reply. The above mentioned bus driver application process, subsequent intimidation by Vince Poon and renunciation of my bus driver assessment interview were recorded in attached emails **(Exhibit F, Page 2-3)**. The arbitrary forfeiture of Plaintiff's opportunity to apply for MBTA bus driver is a blatant act of violating the Age Discrimination in Employment Act, 29 U.S.Code §621 to 29 USC §634.

18. Defendant Vince Poon served merely as an HR benefit manager who had no jurisdiction in meddling with Labor Relations Department business or contracts, His bizarre and unorthodox intrusion into my labor separation options as offered in **Exhibit D** poses huge questions of labor abuse and intimidation. This lawsuit intends to find out who was behind Vince Poon to give him sanction to issue the June 26th 2017 email of intimidation to force Plaintiff renouncing his bus driver application. Plaintiff alleges all Defendants conspiring with Vince Poon to commit crime under Title 18 U.S.C. §241 and acted under color of law to commit crime under 18 USC 242. For the record, Plaintiff has no allegation against HR generalist Laura Karabello. She is ethical.

19. During this round of lay-off stated in Exhibit C, entire 14 rank-and-file Call Center Representatives (CCR's) including Plaintiff, were laid off for cost saving reasons. However, inexplicably, at the same time, MBTA retained the entire 9 high paid supervisors and managers

of the Call Center and re-instated them to new established positions as Customer Experience Officers with the same level of pay and benefits. None of the 14 rank-and-file CCR's was given any chance or consideration to contest for the new positions of Customer Experience Officers. During the layoff moment, the CCR's made 60 thousand dollars per year while the re-instated supervisors and managers were making 80 to 120 thousand dollars per year. GM Shortsleeve appeared to hold a view that CCR's need to sacrifice for the noble cause of cost saving, yet their managers need not suffer the same fate. He granted a very generous privilege to the managers at the expense of the CCR's. Where are the rational basis, common logic and fairness to justify this double standard act? Plaintiff herewith alleges Defendants committing another violation of the Equal Protection Clause of the 14th Amendment of the US constitution.

20. In the 2017 layoff process, none of the Defendants had explained to the CCR's why they separate the entire Call Center Employees into two classes of workers and only favored the economically superior managers. Not a single word was ever uttered nor any piece of document was published by the Defendants to articulate the rationale behind carrying out this blatantly discriminating act. It resonates like Dr. Scott versus Poftak double standards; the former was let go mercilessly, the latter keeps the job comfortably. This worker group classification act blatantly violated the Equal Protection Clause of the 14th Amendment. It creates a Class of One discrimination allegation to all Defendants.

21. MBTA Call Center was situated in Room 5610 of the Boston Transportation Building occupying about 5000 square footage that house 20 plus cubicles for the CCR's. It was a very well-equipped and spacious office by industry standard. In early July, 2017, after sending most CCR's to the street, MBTA upgraded the Call Center at Rm 5610 to accommodate the retained

supervisors and managers with a huge remodeling budget. The end result of the upgrade has made Room 5610 rivals the luxury of a Wall Street traders' office. It is immaculately beautiful and comfortable. While MBTA was executing cost saving at the expense of firing all CCR's, how could they conscientiously justify this wasteful remodeling? It weakens MBTA's cost saving argument and strengthens Plaintiff's allegation of bad faith breach of contract.

22. Plaintiff is 62 years old during the lay-off year in 2017. Plaintiff alleged old age was also one of the factors considered by the Defendants to discriminate me in MBTA employment which violates the Age Discrimination in Employment Act, 29 U.S.Code §621 to §634.

23. Plaintiff is ethnically Chinese who is fluently bilingual. His language proficiency and adequate intellect did not earn any consideration from the MBTA management to grant him an application for the new job of Customer Experience Officer (as stated in paragraph 19). Plaintiff alleges Defendants' failure to grant Plaintiff job application opportunity was based on race and Class of One discrimination, a violation of the Equal Employment Opportunity Act and the Equal Protection Clause of the 14th amendment as well as Title 7 of the Civil Rights Act.

24. Pursuant to Option 3 in the Separation M.O.U. (Exhibit D), Plaintiff is entitled to receive one month severance pay (about $5000) upon his eligible retirement date on December 10th 2019 (65th birthday) when Plaintiff would be ripe to activate his MBTA Pension account. The MBTA delayed this payment for a few months into 2020 without giving him any explanation despite he had made in-person visit, phone calls and emails to the MBTA management. To Plaintiff, this is not merely due diligence failure and gross negligence. It is a form of MBTA retaliation against him because in 2018, Plaintiff had lodged a complaint (Exhibit H) on MBTA's Equal Protection Clause violations to the Massachusetts Commission Against Discrimination (MCAD). MBTA's resentment to Plaintiff's MCAD complaint is

the cause that triggered the retaliations on him. Plaintiff herewith alleges this check delay by the Defendants' as a form of retaliation on plaintiff's critical employment benefits.

25. The MBTA retirement benefits are paid in 2 separate accounts; the MBTA Retirement Fund and the MBTA Deferred Compensation Plan. With my shallow pension accruement, I collect about $530 monthly benefit from each entity. So far, the MBTA Pension Fund has been paying me on time since January 2020 and never misses a beat. However, the Deferred Compensation Plan has delayed authenticating my pension payments until May 11th 2020 when they sent me a letter to memorialize my monthly pension payment (see Exhibit E). Plaintiff alleges the MBTA's intentional delayed authentication as a violation of the Employee Retirement Income Security Act and the same nature retaliation as stated in Paragraph 24.

**JURISDICTION AND VENUE**

26. Jurisdiction in this Court is grounded upon and proper under 28 U.S.C. § 1331 in that this is a civil action arising under the laws of the United States; and 28 U.S.C. §§ 2201-2202. in that there exists between Simon Chan and the Defendants an actual, justiciable controversy as to which Simon Chan requires a declaration of its rights by this Court as well as temporary, preliminary and permanent injunctive relief to prohibit the Defendants from violating federal laws and regulations and abridging Plaintiff's rights protected under the U.S. Constitution.

27. Venue is proper in this Court under 28 U.S.C. § 1391(b) because this is a civil action in which the Defendants maintain their offices and conduct business in this judicial district. Moreover, a substantial part of the events giving rise to the claims herein occurred within this judicial district.

28. Simon Chan has standing to bring the present lawsuit because Defendants' actions have

caused Simon Chan actual injury, which is redressable through the specific relief requested herein occurred within this judicial district.

## CLAIMS FOR RELIEF

### Count I
### Breach of Contracts

29. Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 28 of the general Allegations as set forth above against all the Defendants as Paragraphs 1 through 28 in this Count I of the Complaint.

30. The Defendants have materially breached both the expressed terms and the implied covenants of good faith in the Memorandum of Understanding signed on June 2nd 2016 (Exhibit A) and the Separation M.O.U. signed_on June 21st 2017 (Exhibit D). and such breach of these agreements qualifies as material defaults.

31. The Defendants' breach of contract as alleged above has caused and will continue to cause Plaintiff damages as also alleged aforesaid and further will suffer financial damages and emotional traumas in not being able to keep his Call Center CCR job and not vesting in full pension.

WHEREFORE, Plaintiffs hereby request this Court enter a judgment against the Defendants, jointly and severally, in the amount of Plaintiffs' damages together with statutory prejudgment interest and costs together with an amount of reasonable potential attorney fees incurred by Plaintiff and costs incurred and enter any other relief this court deems just.

### Count II
### Violation of Age Discrimination in Employment Act, 29 USC §621 to 29 USC §634

32. Plaintiff re-alleges and incorporates herein by reference Paragraphs 1 through 31 as set forth above against all the Defendants in Count I as Paragraphs 1 through 31 in this Count II of Complaint.

33. Defendants' laying off plaintiff's CCR job, failure to invite Plaintiff to apply for the new Customer Experience Officer post and aborting Plaintiff's bus driver application in June,2017 have constituted blatant violations of the ADEA 29 US Code §621 to §634.

WHEREFORE, Plaintiffs hereby request this Court enter a judgment against the Defendants, jointly and severally, in the amount of Plaintiffs' damages together with statutory prejudgment interest and costs together with the an amount of reasonable potential attorneys' fees incurred by Plaintiff and enter any other relief this court deems just.

**Count III**
**Equal Protection Clause of the 14th Amendment of the United States Constitution & Title 7 of the Civil Rights Act and Equal Employment Opportunity Act of 1972**

34 Plaintiff re-alleges and incorporates herein by reference Paragraphs 1 through 33 as set forth above against all the Defendants in Count II as Paragraphs 1 through 33 in this Count III of Complaint.

35. Defendants separated the entire MBTA Call Center workers into 2 economic classes of high paid executives and low paid rank and file CCR's. With no persuasive rationale, Defendants offered Golden Parachutes to keep the favored high paid group's jobs and sent the low paid group into the streets. Since Plaintiff was one of the laid-off CCR's, therefore this is a standard **Class of One** discrimination claim against Plaintiff committed by all Defendants.

36. Defendants also discriminated against Plaintiff due to his ethnicity of Chinese origin.

37. Due to the fact that Plaintiff had filed a discrimination complaint against the MBTA to Mass. Commission Against Discrimination in 2018, he therefore suffered employment benefits retaliations from the MBTA as stated in Paragraph 24 and 25. Plaintiff herewith alleges the MCAD complaint was the cause that triggered Defendants to retaliate against Plaintiff.

WHEREFORE, Plaintiffs hereby request this Court enter a judgment against the Defendants, jointly

and severally, in the amount of Plaintiffs' damages together with statutory prejudgment interest and costs together with the an amount of reasonable potential attorneys' fees incurred by Plaintiff and enter any other relief this court deems just.

**Count IV**
**Employee Retirement Income Security Act (ERISA)**

38. Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 37 of the general allegations as set forth above against all the Defendants in count III as Paragraphs 1 through 37 in this Count IV of the Complaint.

39. As stated in the above Paragraph 24, Defendants have failed to pay Plaintiff the contractual one month salary on time upon his pension activation in December 2020 and further delayed this payment a few months into 2020 without giving any explanation. Since this one month salary is a pension related benefit. Therefore, Plaintiff asserts it to be part of his overall pension payments and of pension category. In addition, referring to Paragraph 25, Defendants also intentionally delayed the authentication of Plaintiff's Deferred Compensation account for 5 months. These two failures have constituted obvious violations of the Employee Retirement Income Security Act and were blatant acts of Retaliations due to Plaintiff's MCAD complaint lodged against Defendants in 2018

WHEREFORE, Plaintiffs hereby request this Court enter a judgment against the Defendants, jointly and severally, in the amount of Plaintiffs' damages together with statutory prejudgment interest and costs together with the an amount of reasonable potential attorneys' fees incurred by Plaintiff and enter any other relief this court deems just.

**Count V**
**42 U.S. Code §1983 – Civil Action for deprivation of Rights**

40. Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 39 of the general

allegations as set forth above against all the Defendants in Count IV as Paragraphs 1 through 39 in this Count V of the Complaint.

41. Defendants acted under the color of law, namely cost saving and achieving efficiency as articulated in the Fiscal Management and Control Board objectives, to abuse and discriminate against plaintiff's employment and pension rights. The state law of the FMCB guidelines never gives Defendants any authority to miscarry justice. Cost saving and achieving efficiency objectives have been hijacked as the tools for Defendants to commit wrongs as stated from Paragraph 1 through paragraph 41.

WHEREFORE, Plaintiffs hereby request this Court enter a judgment against the Defendants, jointly and severally, in the amount of Plaintiffs' damages together with statutory prejudgment interest and costs together with the an amount of reasonable potential attorneys' fees incurred by Plaintiff and enter any other relief this court deems just.

**Count VI**
**18 US Codes §241 Conspiracy Against Rights**
**& 18 US Codes §242 Deprivation of Rights Under Color of Law**

42. Plaintiffs re-allege and incorporate herein by reference Paragraphs 1 through 41 of the general allegations as set forth above against all the Defendants in count V as Paragraphs 1 through 41 in this Count VI of the Complaint.

43. The statue of 18 US Codes §241 & 242 are normally applied in police brutality cases. However, the letters and intents of the statues never preclude any white collar crime committed by state officials or government entities, especially the conspiracy clause. Plaintiff herewith applies this statue in a white collar crime setting committed by Defendants.

44. As stated in the above Paragraph 17 and 18, Defendant Vince Poon's action, acting in the capacity of Benefit Manager of the MBTA, sending an intimidation email (Exhibit F, Page 2) to take away

Plaintiff's right of bus driver application, had shown great probability of being coached and approved by higher authority of the MBTA. That's why §241 charge was invoked. Vince poon had his legal theory of labor contract expressed in the same email. Plaintiff asserts Defendant Poon's pretense of HR authority and Poon's expressed legal theory as Color of Law and herewith allege Vince Poon and unnamed co-conspirators to have committed crimes under §241 and §242 of US Codes 18.

WHEREFORE, Plaintiffs hereby request this Court enter a judgment against the Defendants, jointly and severally, in the amount of Plaintiff's damages together with statutory prejudgment interest and costs together with the an amount of reasonable potential attorneys' fees incurred by Plaintiff and enter any other relief this court deems just.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. declaration pursuant to 28 U.S.C. § 2201 that All Defendant's conducts have been violating the United States Constitution.

B. Temporary, preliminary and permanent injunctive relief and/or a final order to all Defendants to remedy all the financial losses/damages and emotional sufferings of Plaintiff.

C. An order awarding plaintiff's costs, expenses and attorney fees in case Plaintiff needs to engage attorneys to conclude this case; and/or such other and further relief as the Court deems just and proper.

## Demand for Jury trial

Plaintiff requests a jury trial to determine all issues of material facts relative to the causes of action asserted herein.

Dated: June 25th 2020

Respectfully Submitted,

SIMON CHAN,

Plaintiff PRO SE

1203 Symmes Circle
Arlington, MA 02474

Telephone: 617-763-0228
Email: Simonchantranslate@gmail.com