UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIMON CHAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLIE BAKER, STEPHANIE POLLACK, )<br>STEVE POFTAK, BRIAN SHORTSLEEVE, )<br>VINCE POON, MASSACHUSETTS BAY )<br>TRANSPORTATION AUTHORITY, )<br>MASSACHUSETTS DEPARTMENT OF )<br>TRANSPORTATION and FISCAL )<br>MANAGEMENT AND CONTROL BOARD, )<br>)<br>Defendants. )<br>) | Case No. 20-cv-11449-DJC |

**MEMORANDUM AND ORDER**

**Casper, J.**                                                                                                                **September 15, 2021**

**I.    Introduction**

Plaintiff Simon Chan ("Chan") has sued Defendants Governor Charlie Baker ("Governor Baker"), Stephanie Pollack ("Pollack"), Steve Poftak ("Poftak"), Brian Shortsleeve ("Shortsleeve"), Vince Poon ("Poon"), the Massachusetts Bay Transportation Authority ("MBTA"), the Massachusetts Department of Transportation ("MDOT"), and the Fiscal Management and Control Board ("FMCB") (collectively, "Defendants") for breach of contract (Count I), and violations of the Age Discrimination in Employment Act ("ADEA") (Count II), Title VII of the Civil Rights Act (Count III), Employee Retirement Income Security Act ("ERISA") (Count IV), 42 U.S.C. § 1983 (Count V), and 18 U.S.C. §§ 241–42 (Count VI).  D. 10. Defendants now move to dismiss Chan's complaint under Fed. R. Civ. P. 12(b)(1) for lack of

subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. D. 18, 25, 30. For the reasons discussed below, Defendants' motions to dismiss are ALLOWED.

## II. Standard of Review

### A. Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). To determine if the burden has been met, the Court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

### B. Failure to State a Claim

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. If they do not, then dismissal is warranted. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12

(1st Cir. 2011). The Court remains mindful that a *pro se* plaintiff, like Chan here, is entitled to a liberal reading of his allegations, no matter how unartfully pled. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).

### III. Factual Background

Unless otherwise noted, the following facts are drawn from Chan's amended complaint, D. 10, and documents referenced therein, and are taken as true for the purposes of resolving the motions to dismiss.

Chan worked for the MBTA as a customer service representative in its customer call center beginning in January 2007. D. 10 ¶ 12. Chan was represented by the AFL-CIO Local 453 ("Local 453"), which had a collective bargaining agreement ("CBA") with the MBTA, and memorandum of understanding in 2016 ("2016 MOU") and 2017 ("2017 MOU"). Id.; D. 1-1 at 1, 12. On June 7, 2017, the MBTA notified Chan that to "achieve maximum cost efficiency and productivity" it was reorganizing his department and eliminating his position, and he would be terminated on June 30, 2017. Id. ¶ 14; D. 1-1 at 11. All call center representative positions were eliminated. D. 10 ¶ 14. Supervisors and managers from the department would be given new jobs as customer experience officers, but the call center representatives were not offered such positions. D. 10 ¶ 19.

Chan's union, Local 453, entered the 2017 MOU in July 2017, which was a separation agreement with the MBTA on behalf of the terminated call center representatives that provided three options: 1) exercise bumping rights into a new position, 2) waive bumping rights and receive three weeks of severance pay, or 3) if eligible for retirement by August 1, 2017, and two months of severance per the CBA, extend employment until August 1, 2017, and forfeit one month of severance pay. Id. ¶ 16; D. 1-1 at 12–13. Chan chose the last option, which extended his employment until August 1, 2017, so that his pension would vest. D. 10 ¶ 16. Chan was 62 years

old when the MBTA eliminated his position, and his original retirement date was December 10, 2019.  Id. ¶¶ 22, 24.

Chan and other laid-off workers were offered the chance to apply for bus driver positions with the MBTA.  Id. ¶ 17.  Chan e-mailed Poon on June 12, 2017, to inquire about the application process and express his interest in becoming a bus driver.  D. 1-1 at 15.  On June 26, 2017, Chan withdrew from the bus driver application process upon learning that he would not also be able to stay employed in his current position until August 1 for his pension to vest.  D. 1-1 at 17, 19.

### IV. Procedural History

Chan, proceeding *pro se*, initiated this case on July 30, 2020, D. 1, and filed a second amended complaint on October 20, 2020, alleging breach of contract and violations of his rights under the ADEA, Title VII, ERISA, the Fourteenth Amendment of the United States Constitution, and federal criminal conspiracy statutes.  D. 10.  Defendants have now moved to dismiss Chan's claims for lack of subject matter jurisdiction and for failure to state a claim.  D. 18, 25, 30.  The Court heard the parties on the pending motions and took the matter under advisement.  D. 42.

### V. Discussion

#### A. Immunity

Chan has sued MDOT, the FMCB, Secretary of MDOT Pollack and Governor Baker in their official capacities for money damages.  D. 10 at 1–2.  In general, "states are immune from claims brought by private persons in federal courts."  Bergemann v. Rhode Island Dep't of Envtl. Mgmt., 665 F.3d 336, 339 (1st Cir. 2011) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); U.S. Const. amend. XI).  Immunity extends to any entity that is an arm of the state, like MDOT.  Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) (citations omitted); Mass. Gen. L. c. 6C, § 2 (creating MDOT within executive office of the Governor).

Additionally, "official capacity suits," like this one naming Baker and Pollack, are "'only another way of pleading an action against an entity of which an officer is an agent' and is therefore 'to be treated as a suit against the entity.'"  Madison v. Cruz, 393 F. Supp. 3d 135, 138 (D. Mass. 2019) (quoting Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)).

"A state may waive immunity from suit [or] Congress may abrogate a state's immunity . . . . [b]ut absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  Bergemann, 665 F.3d at 339 (citations and quotations omitted).  Waiver occurs when a state "unequivocally express[es] its consent to suit" or when it "engag[es] in affirmative conduct during litigation sufficient to evince consent to suit."  Id. at 340 (citations omitted).  Here, Massachusetts has not expressly consented to this lawsuit nor to any of its claims, and Baker, Pollack, MDOT and FMCB have raised sovereign immunity as a basis to dismiss Chan's complaint.  D. 19 at 4; see Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano, 695 F.3d 83, 104 (1st Cir. 2012) (concluding there was no implied waiver from litigation conduct when the "Commonwealth . . . asserted its immunity to suit under the Eleventh Amendment"); McGuigan v. Conte, 629 F. Supp. 2d 76, 83 (D. Mass. 2009) (noting that by statute "Massachusetts has not consented to suit in federal court for contract claims").  In response, Chan asserts that because MDOT receives federal funding, it has waived sovereign immunity, but waiver of immunity must be an explicit condition of the federal program and Chan has made no such allegation.  Doe v. Spears, 393 F. Supp. 3d 123, 130 (D. Mass. 2019) (citing Edelman v. Jordan, 415 U.S. 651, 673–74 (1974)).

Additionally, certain of Chan's federal law claims have not been abrogated by Congress. Defendants are thus immune from Chan's § 1983 claim, Destek Group, Inc. v. State of New Hampshire Pub. Utils. Comm'n, 318 F.3d 32, 40 (1st Cir. 2003) (noting "it is well settled . . . that

5

neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action") (citations omitted) and Chan's ADEA claim, Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000) (concluding "[t]he ADEA's purported abrogation of the States' sovereign immunity is . . . invalid").

Accordingly, this Court lacks subject matter jurisdiction over Chan's breach of contract, § 1983 and ADEA claims as to Defendants MDOT and its FMCB, Pollack and Baker, and their motion to dismiss these claims is ALLOWED.

B.      **Breach of Contract (Count I)**

Chan alleges in his complaint that Defendants breached the 2016 MOU when his position was eliminated.  D. 1 ¶¶ 30–31.  The 2016 MOU incorporated by reference the underlying CBA. D. 1-1 at 1.

Defendants urge that Chan's failure to exhaust his grievance remedies under the CBA precludes his contract claims against the MBTA.  See Stuart v. City of Framingham, No. 1:16-CV-12559-IT, 2020 WL 360552, at *9 (D. Mass. Jan. 22, 2020) (citing Malden Police Patrolman's Ass'n v. Malden, 92 Mass. App. Ct. 53, 57 (2017)).  The CBA's "Grievance and Arbitration Procedures" require Union "members" to first exhaust remedies internally for "any grievance . . . as to the meaning and application of any provision of" the CBA between them and the MBTA.  D. 28-1 at 4–5.  Chan claims that the CBA guaranteed his continued employment with the MBTA, a claim that the MBTA disputes.  His claim therefore fits squarely within the type of grievance that the CBA requires to be filed first internally.

Even assuming *arguendo* Chan properly exhausted his remedies, he does not state a plausible breach of contract claim.  Chan's claim relies upon his belief that the 2016 MOU extended his employment through June 30, 2018, but a plain reading of the 2016 MOU leaves no

dispute that it merely extended the CBA until June 30, 2018. D. 1-1 at 1.[1] In fact, the CBA explicitly contemplates layoff procedures, and the 2017 MOU addressed layoff procedures and separation options for affected employees like Chan. D. 1-1 at 12; D. 28-1 at 3. The MBTA was under no contractual obligation, by the terms of either the CBA or the MOUs, to continue Chan's employment.

Accordingly, the Court allows the motion to dismiss Chan's breach of contract claim (Count I).

C.  **ADEA (Count II) and Title VII (Count III)**

Chan alleges that his termination violated the ADEA, D. 10 ¶¶ 22, 33, and Title VII (alleging national origin discrimination), id. ¶¶ 23, 36–37, and that MBTA's delay in processing his severance and pension payments was retaliation for Chan filing an MCAD complaint against MBTA. Id. ¶ 24.

First, Chan's ADEA and Title VII claims are untimely as both claims were subject to a 300-day limitation period. 29 U.S.C. § 626(d)(1)(B) (ADEA); 42 U.S.C. § 2000e-5(e)(1) (Title VII). Chan alleged that the unlawful conduct occurred on July 31, 2017, or the date his position would be eliminated. D. 27-1 at 2. 300 days from that date would be May 28, 2018, but Chan filed his complaint with the Massachusetts Commission Against Discrimination ("MCAD") on June 25, 2018. Because Chan filed his complaint with MCAD after the statute of limitations had run, these claims are untimely and must be dismissed. See Alston v. Massachusetts, 661 F. Supp. 2d 117, 123 (D. Mass. 2009) (dismissing Title VII claim filed after 300-day statute of limitation period).

---

[1] "When a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged)," the CBA and 2016 and 2017 MOUs here, "[those] document[s] effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998).

Second, even if Chan's claims were timely, his factual allegations are insufficient for a prima facie case under the ADEA and Title VII. Chan's ADEA claim amounts to the fact that he was 62 years old when the MBTA eliminated his position, and he was not offered continued employment with the newly reorganized department. Chan has made no allegation that age was the but-for-cause of his termination, alleging only that he was 62 at the time his position was eliminated. Applying the McDonnell Douglas burden-shifting framework, Tombeno v. FedEx Corp. Servs., Inc., 284 F. Supp. 3d 80, 86 (D. Mass. 2018), Chan must "establish a prima facia case of age discrimination by showing (1) [he] was 40 years or older at the time of termination; (2) his work performance met the employer's legitimate expectations; (3) he suffered an adverse employment action and; (4) the employer filled his position showing the continued need for services." Id. (citing Melendez v. Autogermana Inc., 622 F.3d 46, 50 (1st Cir. 2010)). Chan plausibly alleges prongs 1 and 3 by stating that he was terminated at age 62, however, he alleges no facts as to the others. As to prong four, the MBTA eliminated Chan's position entirely along with the other call center representatives. Chan's Title VII claim — that he was discriminated against due to his national origin — suffers from the same factual shortcomings. Chan has offered "no direct evidence of discriminatory intent" and therefore must allege plausibly the same McDonnell Douglas prima facie case, "(1) that [he] is a member of a protected class; (2) that [he] performed [his] job at an acceptable level; (3) that [he] was terminated; and (4) that the employer filled [his] position with another individual with qualifications similar to [his] own." Campbell v. Bristol Cmty. Coll., 395 F. Supp. 3d 175, 185 (D. Mass. 2019) (citing Windross v. Barton Protective Servs., Inc., 586 F.3d 98, 103 (1st Cir. 2009)). Even as alleged, where the MBTA eliminated Chan's position altogether when it reorganized the department, and Chan has not

alleged the MBTA filled his position with a similarly qualified individual, Chan's prima facie case necessarily fails.

As to Chan's Title VII retaliation claim, Chan must show that "(1) [he] engaged in protected conduct under Title VII; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009). While Chan's filing of an MCAD complaint is protected conduct under the statute, id., and even assuming his payment delay would be considered an adverse employment action, he has not alleged any facts suggesting a causal connection between the payment delay and his filing of the MCAD complaint.

Accordingly, the Court allows the motion to dismiss Chan's ADEA and Title VII claims (Counts II and III).

### D. ERISA (Count IV)

Chan alleges that his payments from MBTA's deferred compensation plan were intentionally delayed until May 2020 in violation of ERISA. D. 10 ¶ 39.

ERISA "specifically excludes coverage for governmental plans, 29 U.S.C. §§ 1003(b)(1), 1002(32) (ERISA 'shall not apply to any employee benefit plan if . . . such plan is a governmental plan' meaning 'a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing')." Grillo v. UniCare Life & Health Ins. Co., 109 F. Supp. 3d 377, 379 (D. Mass. 2015). MBTA's deferred compensation plan is a governmental plan as the MBTA is a political subdivision of Massachusetts. Mass. Gen. L. c. 161A, § 2 (creating the MBTA as "a political subdivision of the commonwealth"). Such plan is therefore not covered by ERISA and the Court lacks jurisdiction over this claim. Grillo, 109 F. Supp. 3d at 379.

Moreover, Chan's complaint does not allege he has suffered any injury that gives rise to relief under ERISA. Even assuming Chan were a participant or beneficiary of a plan covered by ERISA, he could bring suit to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Chan, however, argues only that his monthly pension was delayed improperly from January 1, 2020, until May 11, 2020, when his retirement payments were approved, not that he is owed money under the plan or that the plan prohibited such processing delay. See D. 1-1 at 14. To the extent Chan seeks equitable relief for this four-month delay in processing his payments, he has not alleged any facts to suggest the delay was wrongful. Cf. Lavery v. Restoration Hardware Long Term Disability Benefits Plan, 937 F.3d 71, 85 (1st Cir. 2019) (concluding that ERISA plan's wrongful denial caused years-long delay in benefits and claimant was therefore entitled to equitable prejudgment interest).

Accordingly, the Court allows the motion to dismiss Chan's ERISA claim (Count IV).

### E. Equal Protection Claim (Count V)

Chan alleges that the MBTA violated the equal protection clause of the Fourteenth Amendment on two bases: first, when it eliminated call center representative positions but kept managers and executives in a reorganized department, it was treating one economic class better than another without rational basis, and second, that Chan is a "class of one" and was singled out for unfavorable treatment by the MBTA. D. 10 ¶¶ 19–20, 35.

Chan's first theory relies upon this Court concluding that the MBTA lacked a rational basis when it terminated lower-level employees, the call center representatives, but not managers. "Absent a suspect classification or undue burden on fundamental constitutional rights, a classification made by government actors is vulnerable under the Equal Protection Clause only if

no rational justification can be imagined for its use." Jeneski v. City of Worcester, 476 F.3d 14, 16 (1st Cir. 2007). "The question is not what went on in the mind of the state actor but whether anyone, including the judge, can conceive of a rational reason for such a classification." Id. Chan does not contend that lower-paid employees are a suspect classification, nor has Chan alleged that the MBTA's actions infringe a fundamental right and, even as alleged, Chan only questions that eliminating the fourteen call center representatives in the name of cost efficiency was not actually so, since keeping higher paid employees and moving them to a renovated office would necessarily cost more. But that is an economic and business judgment that the rational basis inquiry does not permit this Court to conduct. See id. (noting that "a classification made by government actors is vulnerable under the Equal Protection Clause only if no rational justification can be imagined for its use").

Chan's "class of one" theory also lacks factual support and fails for the same reasons. "Such a claim is cognizable when—and only when—a 'plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). Chan has not alleged any facts regarding the intent of MBTA in eliminating his position other than cost-saving. Chan was also not singled out compared to others similarly situated, here the other call center representatives; the MBTA eliminated all such positions, so those similarly situated were treated the same.

Accordingly, the Court allows the motion to dismiss Chan's equal protection claim (Count V).

### F. **Criminal Conspiracy (Count VI)**

Chan alleges violations of 18 U.S.C. §§ 241 and 242 against all Defendants but this claim fails as a matter of law because Chan, "a private citizen[,] has no authority to initiate a federal criminal prosecution . . . . Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242 (the criminal analogue of 42 U.S.C. § 1983)." Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam). Accordingly, the Court allows the motion to dismiss the claim for violation of 18 U.S.C. §§ 241–242 (Count VI).

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motions to dismiss. D. 18, 25, 30.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge